Geoffrey D. Strommer
Stephen D. Osborne
Hobbs, Straus, Dean & Walker, LLP
215 SW Washington Street, Suite 200
Portland, OR 97204
Phone: (503) 242-1745
Fax: (503) 242-1072
Email: gstrommer@hobbsstraus.com
Email: sosborne@hobbsstraus.com
*Attorneys for the Metlakatla Indian Community*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **METLAKATLA INDIAN COMMUNITY,** ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> **ALEX M. AZAR**, in his official capacity ) <br> as Secretary, ) <br> U.S. Department of Health & Human Services ) <br> ) <br> **RADM MICHAEL D. WEAHKEE**, in his ) <br> official capacity as Acting Director, ) <br> Indian Health Service ) <br> ) <br> **UNITED STATES OF AMERICA,** ) <br> ) <br> DEFENDANTS. ) <br> ) | Case No. 3:20-cv-00282-HRH |

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 1 -

# COMPLAINT

## (25 U.S.C § 5331(a); 41 U.S.C. § 7104(b))

## JURISDICTIONAL STATEMENT

This Court has subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. § 7104(b), and the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 5331(a), which provides original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts.

## INTRODUCTION AND SUMMARY

Plaintiff Metlakatla Indian Community, for its cause of action against the Defendants named above, alleges as follows:

1. This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the U.S. Department of Health and Human Services ("HHS"). Plaintiff, the Metlakatla Indian Community ("Community"), seeks money damages under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and 25 U.S.C. § 5331(a), based on the Secretary's violation of the Community's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for a Compact and Funding Agreement entered into under the ISDEAA, Pub. L. No. 93-638, as amended, 25 U.S.C. §§ 5301-5399.

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 2 -

2. The Supreme Court has held that the United States' failure to pay the full CSC associated with its ISDEAA agreements constitutes a violation of law and breach of contract. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012) ("[W]e hold that the Government must pay each tribe's contract support costs in full."); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 634 (2005) ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

3. Defendants breached the Community's agreements and violated the ISDEAA by failing to pay the full CSC owed to the Community under the statute and the Community's Compact and Funding Agreement for fiscal years ("FYs") 2014-2016.

4. Defendants paid only a portion of the CSC owed under the Community's contracts, due to their misinterpretation of the ISDEAA. Specifically, IHS failed to pay CSC associated with the portion of the Community's health care program funded with third-party revenues—payments from Medicare, Medicaid, private insurers, and others.

5. This action challenges IHS's denial of the Community's Contract Disputes Act claims for FYs 2014-2016, and seeks damages and other relief.

## JURISDICTION AND VENUE

6. This controversy arises under agreements between the United States and the Community for operation of Indian health programs carried out pursuant to the ISDEAA. This Court has subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. § 7104(b), and the ISDEAA. *See* 25 U.S.C. § 5331(a) (providing original jurisdiction to

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 3 -

Case 3:20-cv-00282-HRH   Document 1   Filed 11/05/20   Page 3 of 17

United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts).

7. In letters dated October 22, 2018, the Community requested IHS contracting officer's decisions on claims for underpaid CSC for FYs 2014-2016. In a letter dated November 6, 2019, IHS denied the Community's claims for all three years. The Community has filed this action within 12 months of receipt of the IHS decisions, as required by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

8. This Court has jurisdiction to review the IHS's decisions on the FYs 2014-2016 claims under the Contract Disputes Act and Section 110 of the ISDEAA. 41 U.S.C. § 7104(b); 25 U.S.C. § 5331(a); 25 U.S.C. § 5331(d).

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district and because all defendants are subject to this Court's exercise of personal jurisdiction.

## PARTIES

10. Plaintiff Metlakatla Indian Community is a federally recognized tribe occupying the Annette Islands Reserve in Alaska, and is an "Indian tribe" eligible to contract and compact with IHS under the ISDEAA. *See* 25 U.S.C. § 5304(e). The Community carries out a range of health care programs, functions, services, and activities ("PFSAs") at its medical and dental clinics on the Annette Islands Reserve. Since 1995,

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 4 -

the Community has been a co-signer of the Alaska Tribal Health Compact with the IHS under the ISDEAA to carry out these PFSAs.

11.     Defendant Alex M. Azar, the Secretary of HHS ("Secretary"), has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

12.     Defendant Rear Admiral Michael D. Weahkee is the Director of the IHS, the agency charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States. 25 U.S.C. § 1661(c)(3). He is sued in his official capacity.

13.     Defendant United States is a party to the Community's ISDEAA agreements. *See* Alaska Tribal Health Compact Between Certain Alaska Native Tribes and the United States of America ("Compact"); Funding Agreement Between the Metlakatla Indian Community and the United States of America for Fiscal Year 2015-2017 ("Funding Agreement"), which remains in effect. See Funding Agreement, § 21 (agreement remains in effect until subsequent agreement is negotiated and becomes effective).

## STATUTORY BACKGROUND: THE ISDEAA

14.     During FYs 2014-2016, the Community provided health care services to eligible American Indians, Alaska Natives, and other eligible beneficiaries pursuant to its

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 5 -

Compact and Funding Agreement authorized by Title V of the ISDEAA, 25 U.S.C. §§ 5381-5399.

15. The ISDEAA authorizes the Community, other tribes, and tribal organizations to assume responsibility to provide PFSAs that the Secretary would otherwise be obligated to provide. In return, the Secretary must provide the Community two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 5325(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. § 5325(a)(2) & (3); 25 U.S.C. § 5396(a) (mandatory application of section 5325(a) through (k) to Title V agreements).

16. There are three types of CSC: (1) pre-award and start-up costs, which are one-time costs to plan, prepare for and assume operation of new or expanded PFSAs, *see* 25 U.S.C. § 5325(a)(5) & (6); (2) indirect CSC, which are costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 5325(a)(2); and (3) direct CSC, which are expenses directly attributable to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers' compensation insurance or other expenses the Secretary would

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 6 -

not have incurred because, for example, the Government is self-insured, *see* 25 U.S.C. § 5325(a)(3)(A). This action involves indirect CSC.

17. The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC. 25 U.S.C. § 5325(g) (emphasis added); *see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

## GENERAL ALLEGATIONS

*Program Income*

18. When IHS provides direct services to eligible beneficiaries, the PFSAs are funded not only by funds appropriated by Congress, but by third-party revenues billed to and collected from Medicare, Medicaid, the Children's Health Insurance Program, private insurers, and others. *See generally* 42 U.S.C. §§ 1395 *et seq.*, 1396 *et seq.*, 1397aa *et seq.* Each year in its budget request to Congress, IHS estimates how much third-party revenue will be collected and available to spend on services, based on past collections. *See, e.g.*, Dep't of Health & Human Servs., *Indian Health Service FY 2021 Justification of Estimates for Appropriations Committees*, at CJ-188 (reporting that in FY 2020, IHS collected an estimated $1.194 billion from third-party insurers). "Public and private collections represent a significant portion of the IHS and Tribal health care delivery budgets"—often 60% or more. *Id.*

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 7 -

19. By the same token, the Community, when carrying out PFSAs under its Compact and Funding Agreement, is required by law and contract to collect third-party revenues and use them to provide further services within the scope of the agreements with IHS. Title V of the ISDEAA mandates as follows:

> (j) PROGRAM INCOME.--All Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement. The Indian tribe may retain all such income and expend such funds in the current year or in future years except to the extent that the Indian Health Care Improvement Act (25 U.S.C. 1601 et seq.) provides otherwise for Medicare and Medicaid receipts. Such funds shall not result in any offset or reduction in the amount of funds the Indian tribe is authorized to receive under its funding agreement in the year the program income is received or for any subsequent fiscal year.

25 U.S.C. § 5388(j). Thus, by law, these third-party revenue funds are part of the federal program carried out by the Community under its ISDEAA agreements. *See Navajo Health Foundation—Sage Memorial Hospital, Inc. v. Burwell*, 263 F. Supp. 3d 1083, 1166-67 (D.N.M. 2016); *Pyramid Lake Paiute Community v. Burwell*, 70 F. Supp. 3d 534, 544 (D.D.C. 2014). *But see Swinomish Indian Tribal Community v. Azar*, 406 F. Supp. 3d 18 (D.D.C. 2019).

20. Similarly, the Alaska Tribal Health Compact provides as follows:

> All Medicare, Medicaid or other program income earned by a Co-Signer shall be treated as additional supplemental funding to that negotiated in the Funding Agreement and the Co-Signer may retain all such income, including Medicare/Medicaid, and expend such funds in the current year or in future years nor shall such funds result in any off-set or reduction in the negotiated amount of the Funding Agreement. Medicare/Medicaid collections of a Co-Signer under Title IV of Public Law 94-437, as

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 8 -

amended, shall be used by the Co-Signer in accordance with any applicable statutory restrictions on the use of such funds.

Alaska Tribal Health Compact Between Certain Alaska Native Tribes and the United States of America, Art. III, § 7.

21. The Community's FYs 2015-2017 Funding Agreement with IHS obligates the Community to engage in third-party billing. Funding Agreement Between the Metlakatla Indian Community and the Secretary of Health and Human Services, October 1, 2014, FYs 2015-2017, § 2 ("Obligations of Metlakatla" include mandate that "Metlakatla is obligated to seek third party reimbursement as provided by federal law and is payor of last resort.").

22. Any third-party revenues collected by the Community are designated by statute and IHS regulations as "program income" that must be, and is, expended on PFSAs included in the Community's Funding Agreement with IHS. 25 U.S.C. § 5325(m) (program income "shall be used by the tribal organization to further the general purposes of the contract; and . . . shall not be a basis for reducing the amount of funds otherwise obligated to the contract"); 42 C.F.R. § 137.110 ("All Medicare, Medicaid, or other program income earned by a Self-Governance Tribe shall be treated as supplemental funding to that negotiated in the funding agreement.").

23. The Indian Health Manual ("IHM") acknowledges that a tribe's "Total Health Care Program" includes the portion funded by "collections from Medicare, Medicaid, and private insurance," not just IHS appropriations. IHM § 6-3.1(G)(34).

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 9 -

Therefore that portion must be included when calculating the amount of CSC owed to the tribe. *Id.* §§ 6-3.2(E)(1)(a)(i), (E)(1)(b), *available at* https://www.ihs.gov/ihm/pc/part-6/p6c3/.

*Calculation of Contract Support Costs*

24. As noted above, the ISDEAA requires IHS to pay full CSC. *Ramah*, 567 U.S. at 185; *Cherokee Nation*, 543 U.S. at 634. For the Community, as for most tribes, the full amount of indirect CSC is determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base. *See* 25 U.S.C. § 5325(c)(3), (4) & (5) (requiring Secretary to report annually on tribes' indirect cost rates and direct cost bases); *Cherokee Nation*, 543 U.S. at 635 ("Most contract support costs are indirect costs 'generally calculated by applying an "indirect cost rate" to the amount of funds otherwise payable to the Tribe.'")

25. The Community's 2014 indirect cost rate agreement with the Department of the Interior's Interior Business Center, which applies government-wide, calls for an indirect cost rate of 23.50% on a direct cost base comprised of "Total direct costs, less capital expenditures and passthrough funds." In FY 2015, the negotiated indirect cost rate was 21.82%. In FY 2016, the negotiated indirect cost rate was 20.60%.

26. IHS accepts the Community's rates, as it must. The controversy is over the amount of the direct cost base. Specifically, the issue is whether third-party revenues expended to provide services within the scope of the Community's ISDEAA agreements

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 10 -

are part of the direct cost base and therefore generate CSC requirements. IHS argues, in its decision denying the Community's claims, that only the Secretarial amount generates CSC, and the Secretarial amount is limited to funding for PFSAs transferred under the ISDEAA agreement. Decision Letter at 6. But the ISDEAA says that the Secretarial amount includes all resources the Secretary "would have otherwise provided" to carry out the PFSAs himself. 25 U.S.C. § 5325(a)(1). As noted above, the Secretary uses third-party revenues to carry out PFSAs when he directly provides services to beneficiaries, so these resources are part of the Secretarial amount. *Pyramid Lake Paiute Community*, 70 F. Supp. 3d at 544 ("[T]he applicable funding level for a contract proposal under [the ISDEAA] is determined based on what the Secretary otherwise would have spent, not on the source of the funds the Secretary uses."); *Navajo Health Foundation—Sage Memorial Hospital, Inc. v. Burwell*, 263 F. Supp. 3d at 1166–67.

27.     Yet in each year, FYs 2014-2016, IHS paid no CSC in support of health care services funded by third-party revenues, giving rise to the damages described next.

28.     As documented in the Community's FY 2014 audited financial records, in FY 2014 the Community expended $607,624 in third-party revenues associated with IHS programs. Of that, $115,933 was spent on indirect costs, leaving a third-party direct cost base of $491,691. IHS paid no CSC in support of those funds, giving rise to the following damages. Applying the Community's negotiated indirect cost rate of 23.50%

to third-party expenditures of $491,691 yields a claim for unpaid indirect CSC in the amount of $115,547.

29. As documented in the Community's FY 2015 audited financial records, in FY 2015 the Community expended $1,694,315 in third-party revenues associated with IHS programs. Of that, $300,078 was spent on indirect costs, leaving a third-party direct cost base of $1,394,237. IHS paid no CSC in support of those funds, giving rise to the following damages. Applying the Community's negotiated indirect cost rate of 21.82% to third-party expenditures of $1,394,237 yields a claim for unpaid indirect CSC in the amount of $304,223.

30. As documented in the Community's FY 2016 audited financial records, in FY 2016 the Community expended $1,736,816 in third-party revenues associated with IHS programs. Of that, $306,745 was spent on indirect costs, leaving a third-party direct cost base of $1,430,071. IHS paid no CSC in support of those funds, giving rise to the following damages. Applying the Community's negotiated indirect cost rate of 20.60% to third-party expenditures of $1,430,071 yields a claim for unpaid indirect CSC in the amount of $294,595.

*Procedural History of the Claims*

31. In letters dated October 22, 2018, the Community requested a contracting officer's decision on the claims for unpaid FYs 2014-2016 CSC described above.

32. IHS denied the Community's claims in a letter dated November 6, 2019. In the denial letter, IHS argues that the Secretarial amount generating CSC needs is limited to appropriated funds transferred in the Funding Agreement and may not include third-party collections.

33. The Community filed this action within twelve months of receipt of the IHS decision, as authorized by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

*Rule of Construction*

34. The ISDEAA incorporates its own rule of interpretation: "Each provision of [Title V] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe." 25 U.S.C. § 5392(f). Applying a similar interpretive rule from Title I, the Supreme Court has said that the government "must demonstrate that its reading [of the ISDEAA] is clearly required by the statutory language." *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 194.

**COUNT I – Violation of the ISDEAA**

35. All prior allegations are adopted by reference as if fully set forth here.

36. The ISDEAA requires IHS to pay the Community's contract support costs in full. 25 U.S.C. § 5325(a) & (g); *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 185.

37. IHS failed to pay indirect CSC on that portion of the Secretarial amount composed of third-party revenues expended to provide services under the Funding Agreement.

38. In doing so, IHS violated the ISDEAA.

39. As a result of IHS's violation of the ISDEAA, the Community sustained damages totaling $115,547 in FY 2014, $304,223 in FY 2015, and $294,595 in FY 2016.

40. Defendants are liable to the Community, under 25 U.S.C. § 5331(a), for its FYs 2014-2016 total damages of $714,637.

## COUNT II – Breach of Contract

41. All prior allegations are adopted by reference as if fully set forth here.

42. The Community's Compact and Funding Agreement incorporate the statutory duty to fully fund CSC. *See, e.g.*, FYs 2015-2017 Funding Agreement, § 4(b) (referencing 25 U.S.C. § 450j-1 and § 458aaa-7(c), which have since been recodified as 25 U.S.C. § 5325 and § 5388(c), respectively). This duty was affirmed by the Supreme Court in *Ramah* and *Cherokee*, *supra*.

43. By failing to pay indirect CSC on the third-party revenue-funded portion of the Secretarial amount, the IHS breached its contractual agreements with the Community.

44. As a result of IHS's breach of its contractual agreements, the Community sustained damages totaling $115,547 in FY 2014, $304,223 in FY 2015, and $294,595 in FY 2016.

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 14 -

45. The Community therefore seeks an award of damages in the total amount of $714,637 under the ISDEAA, 25 U.S.C. § 5331(a) & (d), and the Contract Disputes Act, 41 U.S.C. §§ 7101-7109.

## COUNT III – Declaratory Relief

46. All prior allegations are adopted by reference as if fully set forth here.

47. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief. *See also* 25 U.S.C. § 5331(a).

48. Section 106(a)(2) of the ISDEAA commands that CSC "shall be added" to the Secretarial amount that would otherwise be used by IHS to fund health care services. 25 U.S.C. § 5325(a)(2).

49. When providing health care services directly to Indians and other beneficiaries, the Secretary uses funds appropriated by Congress, but also third-party revenues from Medicare, Medicaid, private insurance, and other sources. In carrying out its Compact and Funding Agreement, the Community is required by law and contract to do the same.

50. Third-party revenues expended to provide services within the scope of the Community's Compact and Funding Agreement are therefore part of the Secretarial amount under section 106(a)(2), yet IHS refuses to pay CSC on that portion of the Community's funding.

51. Therefore the Community is entitled to an Order declaring that the ISDEAA requires IHS to pay the full CSC associated with the Secretarial amount, including the third-party revenue-funded portion of that amount.

## PRAYER FOR RELIEF

52. The Community respectfully requests the Court grant relief as follows:

    A. Award the Community $714,637 in damages for unpaid indirect CSC;

    B. Award such other damages as may be proven in this action;

    C. Declare that IHS must pay CSC on the entire Secretarial amount, including third-party revenues expended on health care services within the scope of the Community's Compact and Funding Agreement;

    D. Order the payment of interest on these claims pursuant to the Contract Disputes Act, 41 U.S.C. § 7109, and the Prompt Payment Act, 25 U.S.C. §§ 3901-3907;

    E. Award the Community its attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 5331(c), and other applicable law; and

    F. Grant the Community such other and further relief as the Court deems appropriate.

DATED: November 5, 2020

*Metlakatla Indian Community v. Azar et al.,* Case No. 3:20-cv-00282-HRH
COMPLAINT - 16 -

Respectfully Submitted,

Geoffrey D. Strommer
Stephen D. Osborne
Hobbs, Straus, Dean & Walker, LLP
*Attorneys for Metlakatla Indian Community*

By: /s/ Geoffrey D. Strommer
Geoffrey D. Strommer (AK Bar # 0911044)
Stephen D. Osborne (AK Bar # 1311107)

DATED: November 5, 2020.